IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |  |
|---|---|---|
| LOUIS HAMLET, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | No. 2:24-cv-02250-SHL-cgc |
| SHELBY COUNTY GOVERNMENT, | ) ) ) | |
| Defendant. | ) | |

## ORDER GRANTING MOTION TO DISMISS

On April 8, 2025, Defendant Shelby County Government filed a motion to dismiss Plaintiff Louis Hamlet's First Amended Complaint under Federal Rules of Civil Procedure 4 and 12(b)(4)–(6) (insufficient process, insufficient service of process, and failure to state a claim). (ECF No. 21.)[1]  Plaintiff Louis Hamlet responded on May 19 (ECF No. 25), and Defendant replied on June 2 (ECF No. 33).

As discussed below, Defendant's motion to dismiss is **GRANTED**.

### BACKGROUND[2]

Plaintiff was hired by the Shelby County Sheriff's Office ("SCSO") as a Deputy Sheriff in 2006.  (ECF No. 19 at ¶ 6.)  At work, he "would wear his hair in a style known as an afro," "as part of his culture as an African American male."  (Id. at ¶ 9.)  This style "was in compliance

---

[1] Defendant also seeks to strike Paragraph 7 of the Amended Complaint under Federal Rule of Civil Procedure 12(f). (ECF No. 21-1 at PageID 126–28.)  According to Defendant, under Local Rule 15.1(b) and Federal Rule of Civil Procedure 10(c), Plaintiff cannot incorporate an entire previously dismissed complaint in an amended pleading.  Defendant is correct on the law, but, because this Order dismisses Plaintiff's action, the motion to strike is **DENIED AS MOOT**.

[2] For the purposes of this Order, the following allegations are construed as true.

with Defendant's Grooming Policy." (Id. at ¶ 11.) On July 21, 2021, he reported to work with his hair in braids, a style also in compliance with the grooming policy. (Id. at ¶¶ 12, 14.) The next day, however, Plaintiff was ordered to remove his braids and received a write-up "for a failed inspection based on his hair." (Id. at ¶¶ 15, 16) Yet, according to Plaintiff, females could wear braids without reprisal. (Id. at ¶ 21.) "Plaintiff reported the conduct to Defendant through Internal Affairs, as well as through Defendant's attorney." (Id. at ¶ 20.)

Four months later, on November 15, 2021, Plaintiff filed a Charge of Discrimination with the Tennessee Human Rights Commission and the Equal Employment Opportunity Commission ("EEOC") ("the Charge" or "EEOC Charge"). (ECF No. 1 at PageID 9–10.)[3] According to the Charge, in June 2021, an inspector said "look at [Plaintiff's] hair," which Plaintiff interpreted to be a "racial slur/comment." (Id.) In the Charge, Plaintiff checks boxes indicating that he was subjected to discrimination based on his race and his sex. (Id.) The "retaliation" box was not checked, but the one indicating that the discrimination is a "continuing action" was. (Id. at PageID 9.) On January 25, 2024, Plaintiff received his "Right to Sue" letter. (Id. at PageID 13–15.)

Plaintiff filed a timely pro se complaint ("Original Complaint") alleging that his employer, SCSO, discriminated against him based on his male gender, in violation of Title VII. (ECF No. 1.) In the Original Complaint, Plaintiff labels "Gender Discrimination" as his cause of

---

[3] Plaintiff's EEOC Charge was attached to the Original Complaint but was inexplicably missing from the Amended Complaint. Instead of reattaching the Charge, Plaintiff attempts to incorporate by reference "all previously filed documents that she [sic] filed, including his Original Complaint and its attachments." ECF No. 19 at ¶ 7. Because such an incorporation is not appropriate, the EEOC Charge is not properly before the Court. See Williams v. Green, Civil Action No. 0:19-131-DCR, 2020 WL 1865769, at *2 (E.D. Ky. Apr. 14, 2020) (finding that a plaintiff "impermissibly incorporate[d] the entirety of his original Complaint by reference"). However, because Defendant's arguments address the EEOC Charge, the Court cites to the exhibit as well, in order to address arguments in the alternative.

action, leaves the boxes for "Race Discrimination" and "Retaliation" blank, and marks that he believes SCSO "is not still committing these acts against [him]." (ECF No. 1 at PageID 3–4 (emphasis in original).)

SCSO filed its Motion to Dismiss and to Strike Attachments to Complaint on May 10. (ECF No. 12.) Because government departments like SCSO are not suable entities, the Court dismissed the Original Complaint without prejudice, allowing Plaintiff time to amend.[4] (ECF No. 18.)

Plaintiff then obtained counsel and, on March 26, 2025, filed the First Amended Complaint for "Race Discrimination, Hostile Work Environment, and Gender Discrimination." (ECF No. 19.) He also alleges that Defendant engaged in retaliatory conduct. (Id. at ¶ 28.) As part of the Amended Complaint, Plaintiff attempts to incorporate by reference "all previously filed documents that she [sic] filed, including his Original Complaint and its attachments, as if restated verbatim." (Id. at ¶ 7.) In addition to the July 2021 braids incident, Plaintiff alleges new incidents of misconduct that occurred after the Charge, including threats and a suspension in 2023.[5] (Id. at ¶¶ 23–35.)

---

[4] Although SCSO's motion included arguments that (1) Plaintiff failed to state facts sufficient to allege gender discrimination under Rule 12(b)(6), (2) he failed to properly serve a copy of the Complaint on Defendant in accordance with the federal rules, and (3) Plaintiff's redundant arguments should be stricken under Rule 12(f) (ECF No. 12-1 at PageID 80–83), the order granting dismissal exclusively addressed whether Plaintiff failed to name a proper defendant (ECF No. 18 at PageID 111 n.1).

[5] For instance, Plaintiff alleges that, on April 24, 2023, he was written up and received a three-day suspension without pay "based on the incident that he reported" back in 2021. (ECF No. 19 at ¶ 27.) He also contends that, based on Defendants' language in job postings, he has been prevented from applying for new positions. (Id. at ¶ 35; ECF No. 19-1 at PageID 119.) Plaintiff also contends that Defendant harassed him regarding his uniform and how he wears his gun belt, whereas his white colleagues were not addressed for similar behavior. (ECF No. 19 at ¶ 34.)

In the present Motion, Defendant seeks to dismiss Plaintiff's complaint for improper service of process and failure to state a claim. First, it asserts that Plaintiff failed to effect proper service under Federal Rule of Civil Procedure 4(j)(2). (ECF No. 21-1 at PageID 134–35.) Moreover, according to Defendant, the race discrimination claim is time barred, and Plaintiff failed to exhaust his administrative remedies for allegations that occurred after the November 2021 EEOC Charge. (Id. at PageID 131–33.) Defendant also argues that Plaintiff's claims of gender discrimination, race discrimination, retaliation, and hostile work environment do not state a claim upon which relief may be granted because he failed to allege facts supporting the elements of each claim. (Id. at PageID 129–30.) As described below, the Court finds Defendant's arguments well taken.

## ANALYSIS

I.   **Improper Service**

To begin, Defendant asserts that Plaintiff failed to properly serve Defendant. According to Defendant, the Amended Complaint was served on counsel via ECF, which is improper under Federal Rule of Civil Procedure 4(j)(2). (ECF No. 21-1 at PageID 134–35.) Plaintiff responds that the Amended Complaint was served on Defendant through its attorney under the Defendant's proper name, and thus it is properly before the Court. (ECF No. 25 at PageID 157–58.)

A complaint can be dismissed for insufficient service of process under Rule 12(b)(4)–(5). Under Federal Rule of Civil Procedure 4(j)(2), a state-created governmental organization, such as a county, can be served by (A) "delivering a copy of the summons and of the complaint to its chief executive officer" or (B) "serving a copy of each in the manner prescribed by that state's law for serving a summons or like process on such a defendant." According to Tennessee Rule

of Civil Procedure 4.04(7), a county may be served "by delivering a copy of the summons and of the complaint to the chief executive officer of the county, or if absent from the county, to the county attorney if there is one designated; if not, by delivering the copies to the county court clerk."

Because Plaintiff served Defendant—a county—via ECF, he did not serve Defendant in accordance with Federal Rule of Civil Procedure 4(j)(2), warranting dismissal. Although Plaintiff's Amended Complaint could be dismissed in its entirety based on insufficient service alone, Defendant's other arguments for dismissal are also addressed below.

## II.     Failure to Exhaust Administrative Remedies

Plaintiff filed his EEOC Charge on November 15, 2021 (ECF No. 1 at PageID 9–10), and Defendant asserts that he failed to exhaust his administrative remedies for any alleged improper acts that occurred afterward (ECF No. 21-1 at PageID 131–32). Plaintiff responds that, under the continuing violations doctrine, the Court should consider all of Defendant's conduct, for Defendant's actions have been "continuous and directly intertwined." (ECF No. 25 at PageID 154–55.)

Typically, a Title VII claim must be based on the issues complained of in an EEOC charge. See Younis v. Pinnacle Airlines, Inc., 610 F.3d 359, 361 (6th Cir. 2010) (citing 42 U.S.C. § 2000e-5(f)(1)); Alexander v. Gardner–Denver Co., 415 U.S. 36, 47 (1974)). Where a plaintiff discovers evidence of a new claim, he must file a new EEOC charge. See Dickson v. Green Dot Pub. Schs., No. 22-cv-2070-SHM-cgc, 2022 WL 3931462, at *4 (W.D. Tenn. Aug. 31, 2022) (citing Younis, 610 F.3d at 361). This process exists because "allowing a Title VII action to encompass claims outside the reach of the EEOC charges would deprive the charged

5

party of notice and would frustrate the EEOC's investigatory and conciliatory role." Younis, 610 F.3d at 362.

Here, the November 2021 EEOC complaint does not include the 2023 allegations contained in the Amended Complaint. Therefore, those claims have not been properly exhausted.

Plaintiff contends that the "continuing violations doctrine" allows all of Defendant's conduct to be considered here. (ECF No. 25 at PageID 154–55.) However, Plaintiff misapplies the doctrine.[6] The continuing violations doctrine tolls the statute of limitations on a Title VII claim to allow a Plaintiff to raise past incidents occurring before the 45-day EEOC charge window. See Sharpe v. Cureton, 319 F.3d 259, 266 (6th Cir. 2003) ("When a continuing violation is found, 'a plaintiff is entitled to have the court consider all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred.'" (quoting Alexander v. Local 496, Laborers' Int'l Union of N. Am., 177 F.3d 394, 408 (6th Cir. 1999))). The continuing violations doctrine does not allow a plaintiff to attach later conduct to an earlier EEOC charge of discrimination. See Jones v. Johnson, 707 F. App'x 321, 328 (6th Cir. 2017) ("To properly exhaust administrative remedies, a complainant must initiate contact with the EEOC within forty-five days of the alleged discrimination." (citing 29 C.F.R. § 1614.105)).

For example, in Jones, the plaintiff filed a September 2011 charge of discrimination after her employer failed to promote her in June and August of that year, and then later alleged

---

[6] The EEOC Charge of Discrimination form does include a box that a plaintiff may check for discrimination consisting of a "Continuing Action." (See ECF No. 1 at PageID 9.) Checking this box, however, as Plaintiff did, does not create an exception to the requirement that Plaintiff exhaust his administrative remedies for conduct occurring after the November 2021 Charge.

another failure to promote in June 2012.  Id. at 328.  Even though the first failure to promote in June 2011 occurred before the 45-day EEOC charge window, the continuing violations doctrine allowed the court to find that both the June 2011 and August 2011 incidents plausibly formed a single, unified "Summer 2011 hiring process," overcoming the statute of limitations.  Id. at 328–29.  However, the later June 2012 failure to promote was a separate incident, requiring a new charge of discrimination.  Id.  Thus, the continuing violations doctrine serves as an exception to the statute of limitations, but not an exception to the requirement to exhaust administrative remedies.  Id.  Here, Plaintiff also was obligated to exhaust EEOC remedies for the later 2023 conduct he alleges.  Therefore, he has failed to exhaust administrative remedies as to the 2023 conduct, warranting dismissal.

### III.     Race Discrimination Claim Time Barred

Defendant also argues that, because Plaintiff did not file his Title VII claim for race discrimination within ninety days of receipt of his right-to-sue letter, this claim is time barred.  (ECF No. 21-1 at PageID 132–33.)  Plaintiff responds that he alleged grounds for racial discrimination in the Original Complaint and checked a box for "discrimination based on race" in the Charge, thus allowing him to bring this racial discrimination claim.  (ECF No. 25 at PageID 153.)  According to Plaintiff, his claim is "explicit[.]"  (Id. at 156.)

Before bringing suit, a Title VII plaintiff must file a charge of discrimination with the EEOC and receive a right-to-sue letter.  Alexander v. Univ. of Memphis, No. 20-5426, 2021 WL 2579973, at *3 (6th Cir. June 7, 2021) (citing Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018)).  After receiving a right-to-sue letter, a plaintiff has ninety days to file his Title VII claim in federal court, and filing a prior complaint does not toll the ninety-day period.  Tate v.

7

United Servs. Assocs., Inc., 75 F. App'x 470, 471 (6th Cir. 2003) (citing Wilson v. Grumman Ohio Corp., 815 F.2d 26, 27 (6th Cir. 1987)).

Based on the timing between the right-to-sue letter and the Amended Complaint, Plaintiff's racial discrimination claim is time-barred. It is true that Plaintiff's November 2021 EEOC Charge has the "Race" box checked (ECF No. 1 at PageID 9), and it is also true that his March 2025 Amended Complaint explicitly pleads "Race Discrimination" (ECF No. 19). However, his Original Complaint—the only pleading filed within the ninety-day window to file a Title VII claim in federal court—pleads only "Gender Discrimination" and discrimination based on "Gender/Sex," with the box for "Race" left unchecked. (ECF No. 1 at PageID 3–4.) Because Plaintiff did not include a racial discrimination claim in the Original Complaint the claim is now time-barred.

## IV.     Failure to State a Claim on Which Relief May Be Granted

Defendant also seeks dismissal based on Plaintiff's failure to state plausible claims for gender discrimination, race discrimination, retaliation, or hostile work environment under Title VII. Specifically, Defendant argues that Plaintiff has not pled sufficient facts to raise an inference that Defendant made adverse employment decisions or committed adverse actions against Plaintiff, or that Defendant created a hostile work environment. As discussed below, the Court agrees with Defendant.

In evaluating a Rule 12(b)(6) motion to dismiss, a court must accept all plausible factual allegations as true. Savel v. MetroHealth Sys., 96 F.4th 932, 939 (6th Cir. 2024) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007); Gentek Bldg. Prods., Inc. v. Sherwin-Williams Co., 491 F.3d 320, 330 (6th Cir. 2007)). Allegations must "'be enough to raise a right to relief above the speculative level' and to 'state a claim to relief that is plausible on its face.'" Keys v.

8

Humana, Inc., 684 F.3d 605, 608 (6th Cir. 2012) (quoting Twombly, 550 U.S. at 555, 570). A plaintiff "must do more than show 'a sheer possibility that a defendant has acted unlawfully,'" and conclusory statements are insufficient to state a claim. Savel, 96 F.4th at 939 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Each claim is separately addressed below.

    *A.    Gender Discrimination Claim*

To bring a Title VII claim based on racial or gender discrimination, a plaintiff must demonstrate "(1) that he is a member of a protected class, (2) that he was subject to an adverse employment decision, (3) that he was qualified for the position, and (4) that he was treated differently than a similarly situated individual outside the protected class." Clemons v. City of Memphis, No. 16-cv-02333-JPM-cgc, 2016 WL 7471412, at *2 (W.D. Tenn. Dec. 28, 2016). According to Defendant, Plaintiff's allegations fail to satisfy the second element. (ECF No. 21-1 at PageID 129–30.) Defendant asserts that Plaintiff has not alleged that he suffered from an adverse employment action, and any references to the contrary are nothing more than mere speculation. (Id.) Plaintiff argues that, because he was written up, was forced to cut his hair to keep his job, and felt embarrassed and harassed, he has sufficiently alleged a gender discrimination claim. (ECF No. 25 at PageID 153–54.)

However, as Defendant argues, Plaintiff does not demonstrate that he suffered an adverse employment action.[7] To allege an "adverse employment action," a plaintiff must demonstrate that, at the hands of his employer, he experienced a circumstance that "constitute[d] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."

---

[7] Although Plaintiff also alleges that Defendant threatened to remove him from his job on April 15, 2023, and that he served a three-day suspension without pay starting on April 24, 2023 (ECF No. 19 at ¶¶ 25, 27), as discussed earlier, it is too late for Plaintiff to rely on these actions.

Fuller v. Mich. Dep't of Transp., 580 F. App'x 416, 422 (6th Cir. 2014).  Although Plaintiff alleges that he received a write-up related to "a failed inspection based on his hair" (ECF No. 19 at ¶ 16), receipt of a disciplinary write-up on its own is insufficient to constitute an adverse employment action.  Handshoe v. Mercy Med. Ctr., 34 F. App'x 441, 447–48 (6th Cir. 2002).  Plaintiff has not alleged a more tangible result of the incident within the time period covered by the right-to-sue letter.

Furthermore, Plaintiff has not offered any allegations that lead to an inkling of plausible inference related to his qualifications for promotion under the claim's third element.  In the Amended Complaint, Plaintiff alleges that his disciplinary record prevented him from applying for new jobs, citing job postings stating that the "[a]pplicant's disciplinary record will be reviewed and used for consideration for selection."  (ECF Nos. 19 at ¶ 35; 19-1 at PageID 119.)  However, this statement in the job posting does not mean that Plaintiff would have been excluded from these positions.  Moreover, Plaintiff does not allege that he was qualified for a promotion, regardless of his disciplinary record.

Because Plaintiff has not included allegations that could be construed to demonstrate plausibility as to gender discrimination, his claim cannot survive a motion to dismiss.

B.      Race Discrimination Claim

Plaintiff also fails to allege a plausible Title VII racial discrimination claim arising out of the Charge.  To bring a Title VII race discrimination claim, a plaintiff must allege (1) that he is a member of a protected class, (2) "that he was subjected to an adverse employment action, (3) that he was qualified for the position, and (4) that either similarly situated, non-protected employees were treated more favorably or he was replaced by someone outside his protected class."  Young v. FedEx Emps. Credit Ass'n, No. 19-cv-2313-TLP-tmp, 2019 WL 7669173, at *4 (W.D. Tenn.

Sept. 17, 2019).  In its Motion, Defendant asserts that Plaintiff has not alleged that a similarly situated, non-protected employee was treated more favorably or replaced Plaintiff.  (ECF No. 21-1 at PageID 132–33.)  Indeed, when Plaintiff alleges the two hair-related incidents in the Charge, he does not allege that white employees wore their hair similarly, let alone that they were treated differently or that they replaced him.  (See ECF No. 1 at PageID 9.)  By not alleging a similarly situated employee in the Charge, Plaintiff's racial discrimination claim fails.[8]

    C.    *Retaliation Claim*

Defendant also contends that Plaintiff's Amended Complaint does not allege a plausible case of retaliation under Title VII.  (ECF No. 21-1 at PageID 132.)  Plaintiff responds that his plausible retaliation claim is "clear[.]"  (ECF No. 25 at PageID 155–56.)

To plead a Title VII retaliation claim, a plaintiff must offer allegations "supporting a reasonable inference" that, as a result of the plaintiff's protected activity, the employer took an adverse employment action.  Prida v. Option Care Enters., Inc., No. 23-3936, 2025 WL 460206, at *6 (6th Cir. Feb. 11, 2025) (citing Sturgill v. Am. Red Cross, 114 F.4th 803, 807 (6th Cir. 2024)).  However, in the Amended Complaint, Plaintiff does not allege that Defendant took any adverse actions after protected activity.  See Alexander, 2021 WL 2579973, at *4 ("For a charge to grow out of an ensuing investigation, the plaintiff's EEOC charge must, at a minimum, relate *facts* that would prompt the EEOC to consider or investigate other forms of discrimination." (emphasis in original) (quoting Young v. DaimlerChrysler Corp., 52 F. App'x 637, 640 (6th Cir. 2002))).

---

[8] Although Plaintiff alleges in the Amended Complaint that he was treated differently than his white colleagues regarding his uniform and how he wears his gun belt (ECF No. 19 at ¶ 34), this incident is unrelated to the Charge and thus cannot cure his pleading defect.

11

Although Plaintiff asserted in his EEOC Charge that he cut his hair "in fear of retaliation or termination" (ECF No. 1 at PageID 10), this allegation does not put Defendant on notice of a retaliation claim.  And although the Amended Complaint adds that Plaintiff was ordered to remove braids from his hair in July 2021, and that Plaintiff "reported the conduct to Defendant through Internal Affairs, as well as through Defendant's attorney" (ECF No. 19 at PageID 115), Plaintiff draws no plausible causal connection between that July 2021 conduct and the suspension he received in April 2023 (id. at PageID 116).

Without plausible allegations as to the elements, Plaintiff's retaliation claim does not survive a Rule 12(b)(6) motion to dismiss.

D.   *Hostile Work Environment Claim*

Lastly, Defendant argues that, based on the allegations, Plaintiff cannot demonstrate that he experienced a hostile work environment under Title VII.  Specifically, Defendant asserts that Plaintiff fails to demonstrate that he experienced the "severe or pervasive" conduct needed to allege a hostile work environment.[9]  (ECF No. 21-1 at PageID 134.)  Plaintiff responds that—because Defendant "force[d]" Plaintiff to cut his hair, gave him an improper write-up, refused to investigate anyone who harassed Plaintiff, and left the write-up in his file—he experienced a hostile work environment.  (ECF No. 25 at PageID 157.)  However, Plaintiff's allegations cannot be deemed "severe" and "pervasive" enough to demonstrate a plausible hostile work environment under Title VII.

To allege a hostile work environment, a plaintiff must demonstrate that the conduct at issue was "severe or pervasive enough to create an objectively hostile work environment—an

---

[9] Because Defendant did not argue that Plaintiff failed to exhaust his administrative remedies before bringing a hostile work environment claim, the Court will not address this issue.

environment that a reasonable person would find hostile or abusive." Powell v. Flash Staffing, No. 2:22-cv-02269-TLP-cgc, 2024 WL 1116929, at *3 (W.D. Tenn. Mar. 14, 2024). Proving a hostile work environment under Title VII is a "high bar." See id. To determine if a work environment is "severe or pervasive" enough to be hostile, a court can consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). Overtly discriminatory statements and racial slurs, even if offensive and condemnable, may not create a hostile work environment under this standard. See Phillips v. UAW Int'l, 854 F.3d 323, 328 (6th Cir. 2017).

Plaintiff fails to allege that he suffered from a hostile workplace when working for Defendant. The three allegations arising from the EEOC Charge—that he received what he perceived to be a "racial slur/comment" about his "natural/afro" hairstyle, that he was forced to remove his braids and received a failed inspection related to his hair the following month, and that he cut his hair "in fear of retaliation or termination"—are not "severe" or "pervasive" enough to give rise to a hostile work environment claim. Moreover, even if he could allege incidents outside of the scope of his EEOC charge, the gap between the 2021 incidents and 2023 allegations is too wide to demonstrate the continuity required to be severe and pervasive. Plaintiff fails to meet the high bar of alleging a hostile work environment claim.

In short, none of Plaintiff's allegations meet the pleading requirements, and thus dismissal is appropriate.

## **CONCLUSION**

Because Plaintiff has not alleged a plausible claim upon which relief can be granted, has sought to pursue untimely claims, and has not properly served Defendant, Defendant's Motion is **GRANTED**. Plaintiff's First Amended Complaint is **DISMISSED WITHOUT PREJUDICE.**

**IT IS SO ORDERED,** this 19th day of September, 2025.

                                              s/ Sheryl H. Lipman
                                              SHERYL H. LIPMAN
                                              CHIEF UNITED STATES DISTRICT JUDGE